COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Decker and Russell
Argued at Richmond, Virginia


VIRGINIA BOARD OF MEDICINE AND
  VIRGINIA DEPARTMENT OF HEALTH PROFESSIONS[1]
                                                        OPINION BY
v.       Record No. 1291-16-2                 JUDGE WESLEY G. RUSSELL, JR.
                                                        MARCH 14, 2017
LEILA HADAD ZACKRISON, M.D.


FROM THE CIRCUIT COURT OF HENRICO COUNTY
John Marshall, Judge

Erin L. Barrett, Assistant Attorney General (Mark R. Herring,
Attorney General; Cynthia V. Bailey, Deputy Attorney General;
Allyson K. Tysinger, Senior Assistant Attorney General, on brief),
for appellants.

Jacques G. Simon (Greg Skall; Jason C. Hicks; Womble Carlyle,
Sandridge & Rice LLP, on brief), for appellee.


The Board of Medicine appeals the decision of the circuit court vacating the Board's case

decision and order disciplining Dr. Leila Hadad Zackrison, appellee, for violating certain laws

governing the practice of medicine and surgery by physicians licensed in Virginia.  The Board

---

[1] This case arises from an order of the Board of Medicine.  The Board is one of several licensing/regulatory boards that fall under the auspices of the Department of Health Professions. Code § 54.1-2503.  While the Department generally serves to manage the administrative functions of the boards it oversees, Code § 54.1-2505, the Board is vested with the authority to regulate the practice of medicine, see Code §§ 54.1-2900 to -2980, to include the ability to investigate and discipline physicians.  Code § 54.1-2400(7), (9).  Although nominally a party, the Department took no action against Dr. Zackrison and was not ordered by the circuit court to take any action or refrain from taking any action as a result of the circuit court's review of the matter. Furthermore, Dr. Zackrison never specifically challenged an action of the Department, appropriately challenging the decision of the Board.  Because the Board is the real party in interest whose order is the subject of this appeal, references to parties in this opinion will be limited to the Board and Dr. Zackrison.

specifically challenges the ruling of the circuit court holding that the Board violated Dr. Zackrison's due process right to a meaningful opportunity to be heard when it determined that Dr. Zackrison did not qualify as an expert witness. Although we find that the Board erred in prohibiting Dr. Zackrison from testifying as an expert, we, for the reasons that follow, reverse the decision of the circuit court and reinstate the Board's finding of a violation and the sanction it imposed.

BACKGROUND

The Board is charged with the licensure of physicians. Code §§ 54.1-2902, 54.1-2911 to -2928.1, 54.1-2929 to -2941. The Board specifically may deny, suspend or revoke a medical license or reprimand a physician based on "unprofessional conduct." Code § 54.1-2915. "[U]nprofessional conduct" includes the "intentional or negligent conduct in the practice of any branch of the healing arts that causes or is likely to cause injury to a patient," Code § 54.1-2915(3), or conducting a practice in a manner dangerous to patients or the public, Code § 54.1-2915(13). To carry out these functions, the Board is empowered to investigate, prosecute, and adjudicate potential violations by individual physicians.[2] Code § 54.1-2400(7), (9), (11).

Pursuant to these statutory responsibilities, the Commonwealth instituted a proceeding regarding Dr. Zackrison, a graduate of Loma Linda University Medical School. Dr. Zackrison completed both a residency in internal medicine and a fellowship in rheumatology at Georgetown University. She has been board certified in both internal medicine and rheumatology since the 1990s and, at all times pertinent to the issues in this appeal, has been a Fellow of both the American College of Physicians and the American College of Rheumatology. Additionally, she sought certifications/credentials in herbal therapy and homeopathy, anti-aging

---

[2] Different arms of the Board prosecute and adjudicate the cases. Unless context suggests otherwise, "we use the term 'Board' when referring in this opinion to the Virginia Board of Medicine acting . . . in its adjudicative capacity and the term 'Commonwealth' when referring to the Virginia Board of Medicine acting in its prosecutorial capacity." Goad v. Va. Bd. of Med., 40 Va. App. 621, 623 n.1, 580 S.E.2d 494, 495 n.1 (2003).

- 2 -

medicine, and other areas, including pursuing a Master's degree in Metabolic and Nutritional Medicine. Without interruption, she has been licensed by the Board to practice medicine in Virginia since 1991.

In her practice, Dr. Zackrison has treated over 25,000 patients with rheumatological diseases. She started treating patients with Lyme disease in 1999, initially seeing 1,500 per year and seeing approximately 600 per year since 2005.

By letter dated August 11, 2014, the Commonwealth notified Dr. Zackrison that an administrative hearing was to be held before the Board to address allegations that she had violated "certain laws governing the practice of medicine in Virginia" in her treatment of "Patient A" over the course of several years. Attached to the notice was a Statement of Particulars wherein the Commonwealth alleged that Dr. Zackrison diagnosed Patient A with several conditions, including Lyme disease and infections, without adequate support in the medical records to make such a diagnosis; provided inappropriate treatment, particularly in the form of extensive antibiotic use; and failed to maintain adequate records documenting her care.

A two-day review hearing began on February 19, 2015, and the Board stressed that it "look[ed] at this [case] as a standard of care case for a single patient, nothing more, nothing less." The Commonwealth first offered the testimony of a Department of Health investigator and then called two physicians to testify as expert witnesses: Dr. William Petri, Jr., an infectious disease specialist, and Dr. Janet Lewis, a rheumatologist.[3] The expert opinions and *curricula vitae* of these witnesses were admitted into evidence without objection. The Commonwealth's experts testified to their opinions regarding the standard of care applicable in Patient A's case. They described their views on which tests were appropriate to administer and what conclusions should be drawn from the

---

[3] The Board is authorized by statute to retain experts to assist in its investigations and prosecutions. Code § 54.1-2925.

results of those tests. They opined Dr. Zackrison's testing and treatment methods did not meet the standard of care applicable to Patient A's case. In forming their opinions, the Commonwealth's experts relied heavily on guidelines promulgated by the Infectious Disease Society of America ("IDSA"), a private organization of health care professionals often cited by the federal Centers for Disease Control and Prevention. IDSA has published peer-reviewed guidelines related to the diagnosis and treatment of Lyme disease.

After the Commonwealth's presentation of evidence, Dr. Zackrison testified in her own defense. Her evidence included two discs, one featuring a "slide presentation from Dr. Zackrison regarding each of the points in the statement of charges" and the other containing peer-reviewed materials "backing up the slide presentation." Dr. Zackrison's *curriculum vitae* also was on one of the discs. During Dr. Zackrison's testimony, her counsel sought to qualify her as an expert on the practice of rheumatology and the applicable standard of care. After counsel's *voir dire* exploring her academic and practice credentials, the Board, *sua sponte*, stated, "Dr. Zackrison is the respondent. You have an expert who is going to testify tomorrow. [The respondent] needs to focus on particulars of the statements. . . . [S]he can tell us what she does in her practice; she has an expert tomorrow." The following colloquy ensued:

> Counsel: So she is not admitted as both an expert and the respondent?
>
> Board: I would say no.
>
> Counsel: Despite her —
>
> Board: She is admitted as the respondent. She's welcome to talk to us about what she does in her practice. She's welcome to address the statement of particulars. Tomorrow you have an expert who will be testifying.
>
> Counsel: Because I believe that when we offered the C.V., we identified her as an expert in rheumatology.

Board: She certainly is a rheumatologist. . . . She's responding, she's here today as the respondent. . . . We accept her credentials as a board certified rheumatologist. . . . We accept her credentials as a physician. She's the respondent and needs to respond to these particular charges. . . . We accept her board certification. You have an expert who is testifying tomorrow, so we are accepting her as the respondent and as a board certified rheumatologist. . . .

Counsel: . . . I just wanted to make the point that she was offered as a respondent and as an expert in her field, but I understand your ruling of rejecting her as an expert in the field.

Dr. Zackrison proceeded to address the allegations. Her testimony included references to the standard of care she applied with respect to Patient A's varied symptomology. Her testimony also included references to the materials she had introduced via disc. The Board at one point interjected, "We've had the literature. And as I said, the opportunity for expert testimony and to rebut those experts today will come from Dr. Horowitz tomorrow. It's [her] opportunity today to tell us why she did what she did with this particular patient." Ultimately, Dr. Zackrison's counsel emphasized her objection to the Board's ruling:

Mr. Chairman, we are certainly going to make a record this time around, and I wanted to make sure that the record is made. Number one, you are precluding Dr. Zackrison from testifying as an expert here just because she's a respondent. I am aware of no rule, no statute and no case law that supports that particular ruling. And she is giving — she[] stands accused here of doing non-evidence based medicine. And what she wants to discuss is why she — just like you said, she wants to discuss why she did something and how she did it, and she's addressing specifically what the witnesses, what the State witnesses said, you are precluding her, telling her not to read the expert testimony. So I want to understand the ruling correctly for the record. Is she precluded from testifying as an expert because she is a respondent?

The Board responded, "Yes," eventually adding that

she may testify within her scope of practice as a board certified rheumatologist. She may give her opinion, which we give weight to because she's a board certified rheumatologist. You have an expert who is coming tomorrow to testify, and we are expecting [Dr. Zackrison] to respond to these particular charges as the respondent.

- 5 -

After additional back and forth, counsel sought further clarity, asking, "I wanted to make sure that I know your ruling that Dr. Zackrison is precluded here from testifying as an expert in rheumatology on her own behalf because she is the respondent; that was your ruling, correct?" In response, the following exchange occurred:

> Board: Dr. Zackrison is the respondent. She has experts and we are accepting her testimony as a board certified rheumatologist.

> Counsel: But the ruling is that she cannot testify as an expert in rheumatology today?

> Board: She is a rheumatologist. We are accepting her testimony as a rheumatologist. I'm not going to play word games with you. . . . She's here as the respondent . . . .

> Counsel: And as I'm offering her as the respondent and as an expert in rheumatology.

Counsel for the Board then interjected:

> As the respondent, she is in a similar situation to even though this is not a criminal proceeding, to a defendant in a criminal trial, she would testify as herself. As the defendant, she wouldn't simultaneously testify as an expert witness. She is testifying here as the treating physician. She's responding to the statement of particulars here as the treating physician. The [Board] recognizes her credentials and her background. I'm not quite sure why [the Board's] ruling is not clear, but hopefully I have shed some light on it.

Dr. Zackrison's counsel then inquired, "[W]hich statute and which regulation of Virginia supports the fact that a respondent is excluded from testifying as an expert witness on her behalf?" The Board's counsel responded, "There is no rule, there is no statute, but this Board is proceeding in that manner."

Dr. Zackrison then continued to explain her diagnostic and treatment methods related to Patient A. She emphasized her reliance on guidelines offered by the International Lyme Disease and Associated Diseases Society ("ILADS"), another private physician-based organization that has promulgated guidelines regarding the diagnosis and treatment of Lyme disease. She

- 6 -

explained that in some instances she applied the standards of care recommended by both organizations, and she stated her disagreements with Dr. Petri with respect to the standard of care regarding tick-borne diseases generally and regarding Patient A specifically. She emphasized her clinical approach.

At times, without objection, Dr. Zackrison provided responses regarding the appropriate standard of care. Specifically, she gave expert opinion testimony regarding the standards promulgated by both IDSA and ILADS and how her care and treatment comported with those standards. On occasion, she made references to the literature that she had submitted.[4] At no point, however, did she proffer the specifics of how her testimony would have been different if the Board had accepted her as an expert.

When Dr. Zackrison's testimony concluded, Dr. Horowitz was qualified as an expert and testified on Dr. Zackrison's behalf. Dr. Horowitz, considered a national expert on tick borne diseases, including Lyme disease, testified to the standard of care as applied to the unique circumstances of Patient A and offered a rebuttal to the Board's expert testimony. Throughout his testimony, he referenced the guidelines promulgated by both IDSA and ILADS and the medical literature that had been submitted. His literature references were so ubiquitous that the Board advised him that it "assume[s] [for] everything you say there is an article [submitted] in here that supports it. You need not quote" the specific articles. On cross-examination, the Commonwealth elucidated that, although Dr. Horowitz is trained in internal medicine, he had not completed a fellowship in either rheumatology or infectious diseases.

On February 25, 2015, the Board issued its decision. In its order, the Board stated that it "found the opinions presented by the Commonwealth's experts to provide convincing evidence

---

[4] A review of the record reveals that, during her testimony, Dr. Zackrison referenced the medical literature to bolster her position on at least ten occasions.

that Dr. Zackrison's care of Patient A fell below the standard of care." The Board further noted that it "reviewed and considered testimony from Dr. Richard Horowitz, a tick-borne disease expert who was presented on behalf of Dr. Zackrison, [and] reviewed and considered Dr. Horowitz's presentation on tick-borne diseases and his review of Patient A's care." The Board "concluded that Dr. Horowitz's testimony was not sufficient to refute the Commonwealth's expert testimony." Based on its findings, the Board found several violations of Code § 54.1-2915(A)(3) and (13) arising from Dr. Zackrison's treatment of Patient A.[5] As a result, the Board issued Dr. Zackrison a reprimand and placed her license on conditional probation, whereby she was required to complete additional hours of continuing medical education. Dr. Zackrison's license to practice medicine was neither suspended nor revoked, and she was permitted to continue to treat patients during the period of conditional probation. She appealed the Board's disciplinary action to the circuit court.

On appeal to the circuit court, Dr. Zackrison, among other contentions, argued: "The procedural rulings made by the . . . Board . . . are unsupported by Virginia law and by the record. Among those holdings were the decision to preclude Dr. Zackrison from being recognized as an expert and being accorded expert witness status while testifying on her behalf, even though she was so designated." Dr. Zackrison further alleged the Board's actions constituted a "violation of constitutional due process rights to . . . 'an opportunity to be heard in a meaningful manner.'"

The circuit court issued its ruling by order dated July 17, 2016. The circuit court found that "the Virginia Board of Medicine violated [Dr. Zackrison's] due process right to a meaningful opportunity to be heard by refusing to allow [her] to testify as a rheumatology expert and limiting

---

[5] The Board found Dr. Zackrison's treatment of Patient A constituted "[i]ntentional or negligent conduct in the practice of [medicine] that causes or is likely to cause injury to a patient or patients" and further found that she had been "[c]onducting h[er] practice in such a manner as to be a danger to the health and welfare of h[er] patients or to the public." Code § 54.1-2915(A).

- 8 -

her presentation of evidence in her own defense to evidence as a lay witness." Having found a constitutional violation, the circuit court vacated the Board's order and remanded the matter to the Board for further proceedings. The Board objected to the order and noted its appeal.

ANALYSIS

I. Scope and Standard of Review

This case arises from the appeal of the Board, an administrative agency subject to the Virginia Administrative Process Act ("VAPA"), Code §§ 2.2-4000 to -4032. Whether in a circuit court or this Court,[6] VAPA requires that

> the party complaining of agency action . . . designate and demonstrate an error of law subject to review by the court. Such issues of law include: (i) accordance with constitutional right, power, privilege, or immunity, (ii) compliance with statutory authority, jurisdiction limitations, or right as provided in the basic laws as to subject matter, the stated objectives for which regulations may be made, and the factual showing respecting violations or entitlement in connection with case decisions, (iii) observance of required procedure where any failure therein is not mere harmless error, and (iv) the substantiality of the evidentiary support for findings of fact. . . . The duty of the court with respect to the issues of law shall be to review the agency decision *de novo*.

Code § 2.2-4027.

In conducting this review of agency action under VAPA, both a circuit court and this Court are guided by certain familiar principles. Regarding the Board's factual determinations, our review is limited to determining whether substantial evidence supports the Board's conclusion. Id. In contrast, questions of law are reviewed *de novo*. Id. We are, however, deferential to legal

---

[6] "Under VAPA, the circuit court reviews the agency's action in a manner 'equivalent to an appellate court's role in an appeal from a trial court.'" Boone v. Harrison, 52 Va. App. 53, 61, 660 S.E.2d 704, 708 (2008) (quoting Mattaponi Indian Tribe v. Dep't of Envtl. Quality ex rel. State Water Control Bd., 43 Va. App. 690, 707, 601 S.E.2d 667, 676 (2004)), aff'd sub nom. Alliance to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality ex rel. State Water Control Bd., 270 Va. 423, 621 S.E.2d 78 (2005)).

conclusions reached by an agency when "the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly . . . ." Evelyn v. Commonwealth Marine Res. Comm'n, 46 Va. App. 618, 624, 621 S.E.2d 130, 133 (2005) (citation omitted). Conversely, if "the legal issues require a determination by the reviewing court whether an agency has . . . *accorded constitutional rights*, failed to comply with statutory authority, or *failed to observe required procedures*, less deference is required and the reviewing courts should not abdicate their judicial function and merely rubber-stamp an agency determination." Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 243, 369 S.E.2d 1, 7-8 (1988) (emphasis added). Because both the Board's decision refusing to accept Dr. Zackrison as an expert and whether that decision violated Dr. Zackrison's constitutional rights present such questions, our review, like that of the circuit court, is conducted *de novo*.

## II. The Board's Refusal to Accept Dr. Zackrison as an Expert

During the proceedings before the Board, the Board provided only one reason for refusing to accept Dr. Zackrison as an expert witness regarding rheumatology and the standard of care—that she would be serving as expert in her own defense. At the hearing, the Board was asked to identify the provision of Virginia law that prohibited an otherwise qualified respondent from serving as an expert and candidly responded that "[t]here is no rule [and] there is no statute . . . ." Similarly, during oral argument before this Court, the Board conceded that it was aware of no authority for such a prohibition.[7]

---

[7] At times before this Court, the Board argued that there should be a *per se* prohibition on a respondent serving as an expert, but, at other times, posited that whether a respondent could testify was left to the discretion of the Board without any objective standard governing the decision. As discussed below, not only is there no basis in Virginia law for a rule of *per se* disqualification, Virginia law provides the opposite. Furthermore, allowing the Board to disqualify a witness on nothing more than a whim is the very definition of arbitrary and capricious, and therefore, is similarly inconsistent with Virginia law. See James v. City of Falls

- 10 -

At common law, there was a prohibition on serving as one's own witness, expert or otherwise.  However, Virginia long ago removed the prohibition.  As Professors Friend and Sinclair have observed:

> As trial by combat gave way to court-based decisions about parties' rights in the late Middle Ages, evidence in the form of sworn testimony by interested parties was forbidden out of fear that an interested witness would necessarily commit perjury.  This was true from the 1600's to the early 1800's in Great Britain. American law prior to 1850 was the same:  interested parties were not allowed to testify in their own cases for fear of perjury.  In cases involving one deceased or incapacitated party, this meant that the "interested" survivor could not testify at all.
>
> In the mid-1800's reforms in England abolished (by statute) the common law disqualification of interested witnesses. American jurisdictions started almost immediately to abolish the disqualification of interested witnesses.  Virginia first did so in a statute passed in 1866, ending the common law disqualification of witnesses for "interest."
>
> *In Virginia today, parties and interested persons are competent to testify as witnesses*.

Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 10-10 (7th ed. 2012) (emphasis added) (footnotes omitted).

The current version of the Virginia statute, Code § 8.01-396, provides, in pertinent part, that

> [n]o person shall be incompetent to testify because of interest, or because of his being a party to any civil action; but he shall, if otherwise competent to testify, and subject to the rules of evidence and practice applicable to other witnesses, be competent to give evidence in his own behalf . . . .

---

Church, 280 Va. 31, 42, 694 S.E.2d 568, 574 (2010) (holding that an action is "'arbitrary and capricious' when it is willful and unreasonable and taken without consideration or in disregard of facts or law or *without determining principle*, or when the deciding body departed from the appropriate standard in making its decision" (emphasis added)).

The Supreme Court has recognized that the statute's reach is not limited to lay witness testimony, specifically holding that, if otherwise qualified, a physician may serve as his own expert in contested litigation. State Farm Mut. Auto. Ins. Co. v. Kendrick, 254 Va. 206, 209, 491 S.E.2d 286, 288 (1997) (citing Code § 8.01-396 as grounds for reversing a trial court's refusal to allow the plaintiff, a medical doctor who was otherwise qualified to be an expert, to give expert testimony because his testimony would be "'self-serving'").

Although the formal rules of evidence are relaxed in proceedings under VAPA, Williams v. Commonwealth Real Estate Bd., 57 Va. App. 108, 130, 698 S.E.2d 917, 928 (2010), we can think of no reason why this near universally accepted principle, that a party may serve as his own witness, should not apply. Accordingly, the Board erred in refusing to accept Dr. Zackrison as an expert solely on the basis that she was also the respondent.[8]

### III. Dr. Zackrison's Qualifications as an Expert

The fact that Virginia law allows a person to serve as his or her own expert does not mean that every person is entitled to give expert testimony. Code § 8.01-396 specifically provides that a person may serve as a witness on his own behalf only "if otherwise competent to testify" and that the witness remains "subject to the rules of evidence and practice applicable to other witnesses . . . ." Thus, although the Board's only stated reason for refusing to accept

---

[8] The issue is one of qualification and not weight. Although the Board cannot refuse to allow an otherwise qualified respondent to testify as an expert, it is free to consider the bias inherent in serving as one's own expert in determining the weight to afford the expert opinion offered. Thus, while we recognize that an otherwise qualified respondent may choose to serve as his or her own expert, we do not comment on the wisdom of such a choice. Cf. Kay v. Ehrler, 499 U.S. 432, 437-38 (1991) (recalling "[t]he adage that 'a lawyer who represents himself has a fool for a client'").

- 12 -

Dr. Zackrison as an expert was that she was the respondent, she was entitled to testify as an

expert only if she was otherwise qualified.[9]

In general, Virginia law provides that, to serve as an expert witness, one

> must possess sufficient knowledge, skill, or experience regarding
> the subject matter of the testimony to assist the trier of fact in the
> search for truth. Generally, a witness possesses sufficient expertise
> when, through experience, study or observation the witness
> acquires knowledge of a subject beyond that of persons of common
> intelligence and ordinary experience.

Fitzgerald v. Commonwealth, 273 Va. 596, 601, 643 S.E.2d 162, 164 (2007) (internal quotation

marks and citations omitted). "[A]ll that is necessary for a witness to qualify as an expert is that

the witness have sufficient knowledge of the subject to give value to the witness's opinion."

Velazquez v. Commonwealth, 263 Va. 95, 103, 557 S.E.2d 213, 218 (2002). However, "certain

subject matter is exclusive to a particular field of expertise such that only witnesses trained as

professionals in that field of expertise are qualified to render expert opinions regarding that

subject matter." Fitzgerald, 273 Va. at 602, 643 S.E.2d at 164.

Recognizing that the practice of medicine is such a field, the General Assembly has

adopted a more stringent qualification standard for experts in medical malpractice cases. In such

cases, which like the instant proceeding before the Board involve questions regarding the

appropriate standard of care, expert qualification is governed by Code § 8.01-581.20.

Code § 8.01-581.20, provides, in pertinent part, that

> [a]ny health care provider who is licensed to practice in Virginia
> shall be presumed to know the statewide standard of care in the
> specialty or field of practice in which he is qualified and
> certified. . . . A witness shall be qualified to testify as an expert on
> the standard of care if he demonstrates expert knowledge of the

---

[9] If Dr. Zackrison was not qualified to testify as an expert for reasons wholly unrelated to her status as the respondent, the Board's decision could be affirmed under the "right result/wrong reason" doctrine, which applies in appeals under VAPA. Reston Hosp. Ctr., LLC v. Remley, 63 Va. App. 755, 771 n.9, 763 S.E.2d 238, 247 n.9 (2014).

- 13 -

standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action.

Board proceedings, however, are not governed by either the rules of evidence or the Medical Malpractice Act; rather, normal rules regarding the admissibility of the evidence are relaxed, Williams, 57 Va. App. at 130, 698 S.E.2d at 928, allowing the Board some flexibility in determining what qualifications a person must possess before qualifying to serve as an expert. As noted above, this flexibility is not unbounded because a Board's determination, regarding who qualifies as an expert or anything else, is arbitrary and capricious when it is made "*without determining principle*, or when the deciding body departed from the appropriate standard in making its decision." James v. City of Falls Church, 280 Va. 31, 42, 694 S.E.2d 568, 574 (2010) (emphasis added).

At oral argument in this Court, the Board was asked what standard the Board applies to determine whether a proffered expert is qualified to provide expert testimony in Board proceedings. After initially stating that "we would have to make one up [as we stand] here," the Board indicated that the appropriate standard would consist of "the qualifications for a standard testifying expert" as illustrated by case law delineating those standards.

Given the deference accorded the Board under VAPA, the ultimate decision of what standard should be applied belongs to the Board; it is free to adopt the traditional Virginia standard, the more stringent medical malpractice standard, or a lesser standard so long as the chosen standard is rational, is otherwise consistent with Virginia law, and provides "determining principle[s]," James, 280 Va. at 42, 694 S.E.2d at 574, that can be applied consistently and that do not reduce the qualification decision to mere whim.

- 14 -

Although the Board ultimately can choose the standard to apply, we can conclude from this record that Dr. Zackrison was qualified to provide expert testimony on the practice of rheumatology under any reasonable standard the Board could adopt. After all, she continuously had been licensed *by the Board* to practice medicine in the Commonwealth for more than two decades, had practiced rheumatology for a number of years, and carried board certifications in both internal medicine and rheumatology. As the Board acknowledged at the hearing, it "accept[ed] her credentials as a board certified rheumatologist . . . [and] as a physician." She had these credentials in common with the Commonwealth's rheumatology expert, Dr. Lewis, whom the Board accepted as an expert in rheumatology. In short, under any reasonable standard that the Board could adopt, Dr. Zackrison is sufficiently qualified by education, training, and experience to give standard of care testimony regarding the practice of rheumatology.[10]

Acknowledging that Dr. Zackrison met the stringent qualification standards for expert testimony found in Code § 8.01-581.20, the Board argues on appeal that the Code section only gives rise to a presumption that a licensed, practicing physician is familiar with the standard of care in his or her specialty and that the Board rebutted the presumption. To reach this conclusion, the Board contends that its ultimate finding that Dr. Zackrison violated the standard of care regarding the treatment of a single patient demonstrates a lack of knowledge of the standard of care. This position suffers from multiple flaws.

First, the Board confuses a question of qualification with conduct. The fact that a physician, by education, training, and experience, has sufficient knowledge to be qualified to give testimony regarding the standard of care does not guarantee that her conduct will always

---

[10] We recognize that "[t]he question whether a witness is qualified to testify as an expert is largely within the sound discretion" of the lower tribunal; however, "[a] decision to exclude a proffered expert opinion will be reversed on appeal . . . when[, as here,] it appears clearly that the witness was qualified." Jackson v. Qureshi, 277 Va. 114, 121, 671 S.E.2d 163, 166-67 (2009) (internal quotation marks and citations omitted).

comply with that standard in every instance. Similarly, the failure in a particular case to comply with the standard of care does not erase the education, training, experience, and knowledge that qualifies one as an expert generally.

Second, and perhaps more importantly, the Board's argument is entirely circular. Because a decision regarding whether Dr. Zackrison was qualified to give expert testimony necessarily had to be made *before* the Board reached its ultimate conclusion regarding the standard of care, that conclusion cannot be used to support the decision to refuse to accept Dr. Zackrison as an expert. The Board's ultimate conclusion could only be reached *after* consideration of all of the evidence, and thus, was not known to the Board when it decided whether or not to accept Dr. Zackrison as an expert. In short, the Board cannot justify its decision to exclude Dr. Zackrison as an expert by pointing to the conclusion it reached in the absence of the evidence it excluded.

Having concluded that the Board erred in refusing to accept Dr. Zackrison as an expert, we now must address whether that error constituted a violation of a "constitutional right, power, privilege, or immunity" or was otherwise an error of law or "procedure where any failure therein is not mere harmless error." Code § 2.2-4027; LifeCare Med. Transps., Inc. v. Va. Dep't of Med. Assistance Servs., 63 Va. App. 538, 552-54, 759 S.E.2d 35, 42-43 (2014) (reviewing exclusion of evidence in a VAPA proceeding as possible "procedural error").

IV.  Due Process Claim

Dr. Zackrison argues and the circuit court found that the Board's refusal to accept Dr. Zackrison to testify as an expert violated her constitutionally protected right to due process. We disagree.

Section 1 of the Fourteenth Amendment to the United States Constitution provides, in pertinent part, that "[n]o state . . . shall . . . deprive any person of life, liberty, or property,

without due process of law . . . ." Because a physician may not practice medicine in Virginia without a license, Code §§ 54.1-2902, 54.1-2929, a license to practice medicine is a significant property interest, and "[t]he due process clause protects a physician's property interest in his professional license." Simopoulos v. Va. Bd. of Med., 644 F.2d 321, 333-34 (4th Cir. 1981) (Butzner, J., dissenting); see also Schware v. Bd. of Bar Exam'rs of N.M., 353 U.S. 232, 238-39 (1957) ("A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment."). Accordingly, before taking disciplinary action against Dr. Zackrison related to her practice of medicine, the Board was required to provide Dr. Zackrison with due process.

Our Supreme Court has identified "the minimum requirements of constitutional due process which must attend administrative hearings: timely and adequate notice, the right to confront adverse witnesses and present one's own evidence, the right to the assistance of retained counsel, and an impartial decision-maker." Hladys v. Commonwealth, 235 Va. 145, 147, 366 S.E.2d 98, 99 (1988) (citing Goldberg v. Kelly, 397 U.S. 254 (1970)). The essence of Dr. Zackrison's due process claim is that the Board's refusal to accept her as an expert prevented her from presenting her own evidence, and thus, denied her a meaningful opportunity to be heard.

As Dr. Zackrison correctly concedes, not every erroneous exclusion of evidence gives rise to a due process violation.[11] See LifeCare, 63 Va. App. at 552-54, 759 S.E.2d at 42-43 (upholding circuit court's application of non-constitutional harmless error standard to decision of DMAS not to admit certain evidence during agency proceedings governed by VAPA); Ramsey

---

[11] This Court is "not bound by concessions of law by the parties." Epps v. Commonwealth, 47 Va. App. 687, 703, 626 S.E.2d 912, 919 (2006) (*en banc*), aff'd on other grounds, 273 Va. 410, 641 S.E.2d 77 (2007).

v. Commonwealth, 63 Va. App. 341, 355-57, 757 S.E.2d 576, 583-84 (2014) (reviewing trial court's refusal to admit certain evidence under the non-constitutional harmless error standard). Thus, to evaluate Dr. Zackrison's due process claim, the nature and scope of the Board's ruling must be defined with precision.

The Board's ruling did not prevent Dr. Zackrison from testifying. She was allowed to testify at length, including giving testimony about the standard of care and IDSA and ILADS guidelines. She even referenced the medical literature on multiple occasions. The Board specifically noted that it was "accepting her testimony as a board certified rheumatologist" and that she was permitted under the Board's ruling to "give her opinion, which we give weight to because she's a board certified rheumatologist." The ruling did not prevent Dr. Zackrison from calling expert witnesses and, in fact, she called Dr. Horowitz. It did not prevent her from calling an expert rheumatologist as a witness.[12] It simply was a ruling that, because of self-interest, the Board would not classify her as an expert.

As such, the Board's refusal to categorize Dr. Zackrison as an expert was not a bar on her ability to "present one's own evidence," Hladys, 235 Va. at 147, 366 S.E.2d at 99, but rather, was merely an erroneous evidentiary ruling. Although, like any erroneous ruling, the Board's decision affected her presentation of evidence, it did not prevent her from putting on her case or deprive her of a meaningful opportunity to be heard. Accordingly, the ruling does not rise to the level of a due process violation, and the circuit court erred in so concluding.

---

[12] We recognize that Dr. Zackrison, operating under the assumption that she would be allowed to serve as her own expert, did not have another rheumatologist available to be called as a witness at the hearing. We note that Dr. Zackrison, when confronted with the Board's ruling, did not request a continuance so another rheumatology expert could be called or seek to call another rheumatologist. Accordingly, the issue of whether she would have been entitled to a continuance to allow her to obtain another rheumatology expert is not before us.

- 18 -

V.  Harmless Error and the Need for a Proffer

Although not a due process violation, the Board's erroneous refusal to accept

Dr. Zackrison as an expert still would require vacation of the Board's order unless the ruling

constituted harmless error.  Code § 2.2-4027; LifeCare, 63 Va. App. at 552-54, 759 S.E.2d at

42-43.  Accordingly, we must determine whether the Board's erroneous ruling was such that it

"could have had a significant impact on the ultimate decision . . . ."  Jones v. West, 46 Va. App.

309, 327, 616 S.E.2d 790, 799 (2005) (quoting Va. Bd. of Med. v. Fetta, 244 Va. 276, 283, 421

S.E.2d 410, 414 (1992)).  A non-constitutional error is harmless if "'when all is said and done,'"

we can conclude that "'the error did not influence the [factfinder], or had but slight effect.'"

Mall Amusements, LLC v. Va. Dep't of Alcoholic Bev. Control, 66 Va. App. 605, 617, 790

S.E.2d 245, 251 (2016) (alteration in original) (quoting Anderson v. Commonwealth, 282 Va.

457, 467, 717 S.E.2d 623, 628 (2011)).

When, as here, the erroneous ruling results in the exclusion of testimony, we review the

substance of the testimony that would have been given but for the erroneous ruling to see if it

might have affected the outcome.  Accordingly, Virginia law requires the proponent of excluded

testimony to proffer the specific substance of the testimony to allow us to determine if its

exclusion was harmless error or not.

As we recently articulated in Massey v. Commonwealth, 67 Va. App. 108, 132-33, 793

S.E.2d 816, 828 (2016),

> "In Virginia, when testimony is rejected before it is delivered, an
> appellate court has no basis for adjudication unless the record
> reflects a proper proffer."  Ray v. Commonwealth, 55 Va. App.
> 647, 649, 688 S.E.2d 879, 880 (2010) (internal quotation marks
> and citation omitted).  For a proffer to be sufficient, it must allow
> us to examine both the "admissibility of the proposed testimony,"
> and whether, even if admissible, its exclusion "prejudiced" the
> proffering party.  Molina v. Commonwealth, 47 Va. App. 338,
> 368, 624 S.E.2d 83, 97 (2006) (citations omitted).

With respect to prejudice, we stated that

> [w]e can determine prejudice only upon "proper proffer showing what the testimony would have been." Holles v. Sunrise Terrace, Inc., 257 Va. 131, 135, 509 S.E.2d 494, 497 (1999); Molina, 47 Va. App. at 368, 624 S.E.2d at 97 (citations omitted). Even when "we are not totally in the dark concerning the nature of the evidence," we still must "know enough about the specifics" to be able to "say with assurance" that the lower court committed prejudicial error. Smith v. Hylton, 14 Va. App. 354, 358, 416 S.E.2d 712, 715 (1992).

Id. at 133, 793 S.E.2d at 828. Thus, "'[t]he failure to proffer the expected testimony is fatal to [the] claim on appeal.'" Id. at 132, 793 S.E.2d at 828 (quoting Molina, 47 Va. App. at 367-68, 624 S.E.2d at 97). The requirement that a party proffer the testimony that it would have adduced absent the erroneous ruling applies to expert testimony. Black v. Bladergroen, 258 Va. 438, 446, 521 S.E.2d 168, 172 (1999) (holding that the appellate court could find exclusion of expert's testimony prejudiced offering party because he "made an appropriate proffer setting forth what [the medical expert's] testimony against each defendant would have been"); Holles, 257 Va. at 135, 509 S.E.2d at 497 (holding that failure to proffer the anticipated testimony of a purported expert nurse was fatal to claim on appeal); Molina, 47 Va. App. at 367-68, 624 S.E.2d at 97 (holding that "failure to proffer [a disallowed medical expert's] expected testimony is fatal to [the] claim on appeal").

There is no question that, in the proceedings before the Board, Dr. Zackrison created a sufficient record to establish that the Board erred in refusing to allow her to testify as an expert.

- 20 -

Nevertheless, the record does not reveal the specifics of how her testimony would have differed if the Board had accepted her as an expert.[13]

At oral argument, Dr. Zackrison stated that, if she had been permitted to do so, she would have correlated the care she rendered with the medical literature that had been admitted on the discs she submitted. When asked where in the record she proffered the specifics of the testimony she would have given, she pointed to an exchange in which the Board ruled that the discussion of literature should be left to her expert.

Although the cited portion of the record supports the conclusion that, but for the erroneous ruling, her testimony would have touched on the relationship between her care and the medical literature to a greater degree than it did, no proffer was made regarding the specifics of what that testimony would have been.[14] We do not know whether her testimony simply would have recited the literature, which had been admitted into evidence already, or done something more. We do not know how her citations to the literature would have differed from the references she was allowed to make or from Dr. Horowitz's repeated references to the literature in support of his opinion that Dr. Zackrison's care and treatment of Patient A was appropriate. Given Dr. Horowitz's repeated references to the literature, it is certainly possible that any of the

---

[13] At oral argument, Dr. Zackrison acknowledged that her claim was about specific testimony that she was not allowed to give and not based on her testimony lacking the imprimatur of the "expert" label. This position is reasonably grounded in the Board's statements that it was "accepting her testimony as a board certified rheumatologist" and that she was permitted under the Board's ruling to "give her opinion, which we give weight to because she's a board certified rheumatologist."

[14] We note that, once the Board ruled that it would not accept her as an expert, Dr. Zackrison never requested that the Board allow her to specify what additional testimony she would give if the Board had accepted her as an expert. Accordingly, this is not a case where the lower tribunal refused to accept a proffer. See, e.g., Smith, 14 Va. App. at 358-59, 416 S.E.2d at 715.

unknown references to the literature that Dr. Zackrison would have made would have been merely cumulative, and thus, not have affected the outcome.

Accordingly, although "we are not totally in the dark concerning the nature of the evidence," the lack of a specific proffer of what her testimony would have been does not allow us to "know enough about the specifics to be able to say with assurance that the [Board] committed prejudicial error." Tynes v. Commonwealth, 49 Va. App. 17, 22, 635 S.E.2d 688, 690 (2006) (internal quotation marks and citation omitted). Accordingly, because we cannot say that she suffered prejudice from the erroneous ruling, we must reverse the decision of the circuit court vacating the Board's order and reinstate the final disciplinary order of the Board.

CONCLUSION

Although we find that the Board erred in prohibiting Dr. Zackrison from testifying as an expert, we, for the reasons stated above, reverse the decision of the circuit court and reinstate the Board's finding of a violation and the sanction it imposed.

Reversed and final judgment.[15]

---

[15] Despite our finding of error, we are reinstating the Board's disciplinary order. Accordingly, final judgment is appropriate because Code § 2.2-4029's prohibition that "the court shall not itself undertake to supply agency action" does not apply.