COURT OF APPEALS OF VIRGINIA

Present:   Judges Fulton, Callins and Senior Judge Humphreys
Argued at Richmond, Virginia

WILLIAM G. CLOWDIS, JR., M.D.

                 MEMORANDUM OPINION[*] BY
v.   Record No. 1551-24-3     JUDGE ROBERT J. HUMPHREYS
                  OCTOBER 21, 2025

VIRGINIA DEPARTMENT OF
 HEALTH PROFESSIONS, ET AL.


FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

M. Paul Valois (James River Legal Associates, on briefs), for
appellant.

M. Brent Saunders, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General; Robert B. Bell, Deputy Attorney
General; Allyson K. Tysinger, Senior Assistant Attorney General, on
brief), for appellees.


William G. Clowdis, Jr., M.D.,[1] challenges the circuit court's order granting the

Department of Health Professions' and Board of Medicine's plea in bar to his claims for

declaratory judgment.  Clowdis sought a declaration that a 2007 order by the Department

suspending his medical license was void ab initio, as were two subsequent orders by the Board of

Medicine that were based in part on the 2007 order.  He also sought a declaration that Code

§ 54.1-2409(A) is unconstitutional as applied to him because it permits the automatic suspension

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Clowdis filed this action under the pseudonym "Dr. John Doe, M.D." and moved the
circuit court for leave to proceed anonymously under Code § 8.01-15.1.  The circuit court never
ruled on that motion, and Clowdis did not assign error to the court's failure to do so.  Thus, this
case has been restyled using his name.  *See Clowdis v. Owens*, No. 230107 (Va. Aug. 14, 2023)
(order) (restyling earlier related case in Clowdis's name after he failed to seek Court's leave to
proceed under a pseudonym).

of a medical license based on false information or error. The circuit court concluded that Clowdis's claims were barred by the statute of limitations under Code § 8.01-243(B) and by the doctrine of sovereign immunity. This appeal follows.

BACKGROUND

On September 6, 2005, Clowdis pleaded guilty to two misdemeanors and a felony in Colorado. The Colorado court sentenced Clowdis to a four-year diversion program with a return date of September 6, 2009. The sentencing order expressly states: "JUDGMENT OF CONVICTION IS NOW ENTERED." The terms of the sentencing order required Clowdis to complete domestic violence and child abuse classes, pay counseling costs "for Ms. Clowdis and two minor children," submit to random urinalysis testing, and not possess any firearms "throughout the entire term" of the deferred judgment and sentencing. The order also required Clowdis to pay restitution and provide his general residence location information for the benefit of the victims, and it maintained a protective order until the end of the deferred judgment term. The order permitted Clowdis to participate in electronic monitoring at the discretion of diversion program authorities.

On March 16, 2007, the Office of the District Attorney for the First Judicial District of Colorado issued Clowdis a "Certificate of Completion." The document "verifies the attendance and participation of [Clowdis] conforming to the guidelines established by [the district attorney's office]." It is signed by an individual named Bobbi Spicer, and the signature line is labeled "Diversion Services." The document does not otherwise explain its significance or what Clowdis completed. Clowdis alleges that he "completed [the] diversion program" on March 16, 2007, and that his guilty plea and felony charge were withdrawn and his case dismissed with prejudice by operation of the Colorado deferred judgment statute on that date. *See* Colo. Rev.

Stat. § 18-1.3-102 (2007). The Colorado court entered an order dismissing the felony charge with prejudice on August 19, 2008.

But before that dismissal, in April 2007, the Director of the Department issued an order suspending Clowdis's medical license under Code § 54.1-2409(A) because the Department had received records from the Colorado court reporting that Clowdis had pleaded guilty to a felony. Clowdis did not appeal or otherwise dispute the 2007 order.

On December 4, 2008, Clowdis petitioned the Board under Code § 54.1-2409(D) for reinstatement of his medical license. The Board issued a "Statement of Particulars" on May 26, 2009, concluding that Clowdis "may be in violation" of various professional conduct laws, including Code §§ 54.1-2915(A)(1), (2), (4), (14), (16), (18), (20) and 54.1-111(A)(6). These potential violations were based on the underlying facts in the Colorado felony case as well as various other issues the Board discovered while investigating Clowdis's petition, generally stemming from Clowdis's struggles with mental illness and substance abuse.

The Board's statement of particulars also noted that Clowdis had provided "false and/or misleading information" in his petition for reinstatement and to a Department investigator during the follow-up investigation.[2] According to the statement, Clowdis answered "No" to the question, "Do you have a physical disease, mental disorder, or any condition which could affect your performance of professional duties?" But the Department investigator eventually discovered, after questioning Clowdis about the felony charge, that Clowdis had "an extensive history of mental illness" including "numerous diagnoses" from approximately 2001 to 2007. The diagnoses included:

> major depression with psychotic features; adjustment disorder;
> adjustment disorder with psychotic features, generalized anxiety

---

[2] Clowdis attached the statement of particulars as an exhibit to the complaint and mentioned it in his allegations; thus, it is part of the pleading. Rule 1:4(i); *Cal. Condo. Ass'n v. Peterson*, 301 Va. 14, 22 (2022).

disorder; post traumatic stress disorder; delirium secondary to opiate and benzodiazepine dependence and/or withdrawal; manic episode; delusional and psychotic thinking; panic disorder; bipolar disorder I with psychosis; paranoia; narcissistic personality disorder; mood disorder; undifferentiated somatoform disorder secondary to narcissistic personality traits; inadequate coping skills; and seizure disorder related to benzodiazepine withdrawal.

Clowdis also answered "No" to the question of whether he had ever had his clinical privileges suspended, revoked, or denied, or been otherwise disciplined by a health care facility or entity. But, according to the statement of particulars, the Board's investigation revealed that in 2003, he filed a complaint in federal court against Carillion Health Care Plans, Inc. and Carillion New River Valley Medical Center alleging that the former had wrongfully suspended him as a preferred provider after he was charged with assault and battery, sexual battery, and contributing to the delinquency of a minor in October 2000. Finally, the statement of particulars noted that Clowdis's written account of the felony charge to the Department investigator was inconsistent with documentation the investigator had obtained from the Colorado court and with Clowdis's medical records.

Based on the statement of particulars, the Board required Clowdis to withdraw his request for reinstatement and to undergo various medical and psychological evaluations before the Board would formally consider his case. On May 19, 2011, the Board held a hearing on Clowdis's petition for reinstatement. At the hearing, Clowdis attempted to argue that he was not a convicted felon, but the Board limited him to presenting evidence and argument regarding his mental health and medical condition. In an order dated May 24, 2011, the Board concluded that Clowdis had violated Code § 54.1-2915(A)(16) and (20) based on the disposition of the Colorado case and its underlying facts. The Board also concluded that Clowdis had violated Code § 54.1-2915(A)(2) and (14) through certain incidents of substance abuse and struggles with mental illness. The Board continued the suspension of Clowdis's license but ordered that the

suspension would be stayed and his license reinstated upon his entry into the Virginia Health Practitioners' Monitoring Program (the Program). Shortly thereafter, Clowdis entered a monitoring contract under the Program, and the Board provisionally reinstated his license. But Clowdis was dismissed from the Program in 2012 because he withdrew from monitoring. Clowdis later explained that the Program "prevented [him] from earning any wages, even in a non-medical capacity, . . . prevented him from meeting his court-ordered child support obligation[,] and . . . prevented him from leaving the Commonwealth."

In 2013, the Board held a hearing on Clowdis's violation of the 2011 order. Clowdis again attempted to challenge the 2007 suspension order, but the Board disallowed it. The Board entered an order finding that Clowdis had violated its 2011 order by failing to comply with the terms of his Program contract and being dismissed from the Program. The Board suspended Clowdis's license but ordered that the suspension would be stayed if Clowdis entered another Program contract. The Board also imposed a $5,000 monetary penalty and issued him a reprimand. Clowdis appealed the 2013 order to a circuit court, which affirmed the suspension of his license. Clowdis appealed the circuit court order to this Court, and we also affirmed. *See Clowdis v. Va. Bd. of Med.*, No. 1381-17-2, 2018 Va. App. LEXIS 34 (Feb. 13, 2018).

Clowdis filed a petition to the Board in May 2022 to be exonerated under Code § 54.1-2400(10)(i). Clowdis sent follow-up notices in August 2022 and February 2024, but the Board did not act upon the request.[3]

In 2023, Clowdis filed a petition for writs of mandamus and prohibition in the Supreme Court of Virginia against the Department, the Board, and the directors of both agencies; he sought restoration of his medical license, a declaration that the 2007 order and all subsequent

---

[3] The complaint states that the Board "refused to act" upon the petition, but it does not explain whether the Board responded in any way to the petition, or what reasons, if any, the Board gave for its refusal.

related orders were void ab initio, and an order directing the respondents to correct public records of Clowdis's license suspension status and history. *See Clowdis v. Owens*, No. 230107, slip op. at 1 (Va. Aug. 14, 2023) (order). Clowdis argued that because he was never convicted of a felony, the Department did not have jurisdiction to enter the 2007 order suspending his license under Code § 54.1-2409(A). *Id.* at 2. Thus, according to Clowdis, the 2007 order was void ab initio, as were the Board's 2011 and 2013 orders relying on the 2007 order. *Id.*

The Supreme Court denied the petition. *Id.* at 2-4. The Court held that the writ of mandamus was barred by the statute of limitations because a medical license is a property interest; thus, Clowdis's action to restore the license was subject to the five-year statute of limitations applicable to "[e]very action for injury to property." *Id.* at 3 (quoting Code § 8.01-243(B)). Each of the challenged orders was entered more than five years before the 2023 petition. *Id.*

The Supreme Court further held that, "[t]o the extent [Clowdis] asserts the 2007 order is void and subject to challenge at any time, he has not demonstrated the Director of [the Department] lacked jurisdiction to enter the 2007 order." *Id.* at 3. Even if "the Director erred in concluding the documentation demonstrated [Clowdis] was actually convicted of the felony under Colorado law," the Court explained, the error would "not render [the Department] without jurisdiction to enter such a suspension order." *Id.* Thus, the 2007 order was not void ab initio; if it was erroneous, it was merely voidable. *Id.* A writ of mandamus did not lie because an order voidable for error, rather than void ab initio, must be challenged by timely appeal or other appropriate proceeding. *Id.* at 3-4. Finally, the Supreme Court concluded that a writ of prohibition did not lie because there was no impending future action to prohibit. *Id.* at 4.

Clowdis brought the present declaratory judgment action in March 2024. The Department and the Board filed a plea in bar and motion to dismiss, arguing that Clowdis's

claims for declaratory judgment were barred by sovereign immunity, the statute of limitations, and the doctrines of res judicata and collateral estoppel. Based on the pleadings, the circuit court concluded that Clowdis's claims were time-barred under Code § 8.01-243(B) and barred by sovereign immunity. Clowdis filed motions to stay the final order, for reconsideration, and for leave to file an amended complaint. The court denied the motion to stay and did not rule on the other motions.

On appeal, Clowdis assigns error to the circuit court's conclusions that the statute of limitations and sovereign immunity bar his claims. Clowdis also argues the circuit court's denial of his motion to stay the final order was erroneous because his motions for reconsideration and for leave to file an amended complaint were meritorious and the court should have granted them.

ANALYSIS

I. Legal Background and Scope of Issues on Appeal

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Cornell v. Benedict*, 301 Va. 342, 349 (2022) (quoting *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019)). "[W]here no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented." *Massenburg*, 298 Va. at 216 (quoting *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001)). Under this approach, "we accept the plaintiff's allegations in the complaint as true," and our review of the circuit court's judgment is "'functionally de novo.'" *Plofchan v. Plofchan*, 299 Va. 534, 547-48 (2021) (quoting *Massenburg*, 298 Va. at 216). In addition, an "[a]ppeal of a decision on a plea in bar of the statute of limitations involves a question of law that we review de novo." *Robinson v. Nordquist*, 297 Va. 503, 513 (2019) (quoting *Van Dam v. Gay*, 280 Va. 457, 460 (2010)).

"Every action for injury to property . . . shall be brought within five years after the cause of action accrues." Code § 8.01-243(B). As the Supreme Court has already held, Clowdis's medical license is a property interest subject to the limitation period in Code § 8.01-243(B). *Clowdis*, No. 230107, slip op. at 3; *see Va. Bd. of Med. v. Zackrison*, 67 Va. App. 461, 482 (2017). Thus, the statute of limitations required him to bring an action for injury to his license within five years of the action's accrual. *Id.*

Clowdis asserts several reasons why the statute of limitations did not bar his claims, even if it applies to them, but he has waived all but one of those arguments. For clarity, we will first delineate the arguments Clowdis has waived and which argument we address on appeal.

In his effort to surmount the time-bar, Clowdis first argues that his claims are timely under the continuing violation doctrine. "The continuing violation doctrine is one in 'which acts occurring outside the statute of limitations may be considered when there is a "fixed and continuing practice" of unlawful acts both before and during the limitations period.'" *Commonwealth ex rel. Fair Hous. Bd. v. Windsor Plaza Condo. Ass'n*, 289 Va. 34, 65 (2014) (quoting *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 271 (4th Cir. 2013)). According to Clowdis, each act by the Board after the 2007 suspension order constituted a new due process violation resetting the accrual date of the statute of limitations. But Clowdis did not reference this argument in any assignment of error. "[T]he scope of argument on appeal is limited by the assignments of error." *Dudley v. Est. Life Ins. Co.*, 220 Va. 343, 348 (1979). "Only assignments of error listed in the brief will be noticed by this Court." Rule 5A:20(c)(1). Thus, we do not consider his argument that his claims are timely under the continuing violation doctrine. *See id.*

Next, Clowdis argues that the statute of limitations cannot bar his claims because the 2007 order is void ab initio. "Objections to void ab initio judgments may be raised by any party

- 8 -

in the case at any point during a valid direct or collateral proceeding where the voidness of the order is properly at issue, including by a court for the first time on appeal." *Hannah v. Commonwealth*, 303 Va. 106, 120 (2024); *see Clowdis*, No. 230107, slip op. at 3 (concluding the limitation period in Code § 8.01-243(B) applied to Clowdis's claims but nonetheless analyzing his challenge to the 2007 order's validity "[t]o the extent [he] asserts the 2007 order is void and subject to challenge at any time"). An action seeking a declaratory judgment that an order is void ab initio is one such collateral proceeding. *Bonanno v. Quinn*, 299 Va. 722, 737 (2021). Thus, we agree in principle that the statute of limitations would not bar Clowdis's assertion that the 2007 order is void ab initio. But Clowdis preserved only one of the several arguments he advances on appeal to support his assertion that the order is void ab initio.

Clowdis first argues that the 2007 order is void ab initio because the Department's conclusion that he was convicted of a felony in Colorado constituted extrinsic fraud. Yet Clowdis's relevant assignment of error asserts that the 2007 order "is void ab initio for lack of due process." It does not assert fraud. As noted, "the scope of argument on appeal is limited by the assignments of error." *Dudley*, 220 Va. at 348. An assignment of error is like "a pleading, and in the court of last resort it performs the same office as a . . . complaint in a court of original jurisdiction." *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 123 (2017) (quoting *Puckett v. Commonwealth*, 134 Va. 574, 579 (1922)). "[A]ssignments of error set analytical boundaries for the arguments on appeal, provide a contextual backdrop for our ultimate ruling, and demark the stare decisis border between holdings and dicta." *Id.*; *see also Findlay v. Commonwealth*, 287 Va. 111, 115-16 (2014). Thus, we do not consider his argument that the order is void for extrinsic fraud. *See id.*

Clowdis next asserts that the 2007 order is void ab initio because it was entered in violation of his procedural due process rights. Although Clowdis advances three lines of

argument to support this point, he provides legal authorities and argument to back only one of them.[4]

Clowdis argues his due process rights were violated when: (1) the Department initially suspended his medical license under Code § 54.1-2409(A) without a hearing; (2) the Board did not conduct a full hearing within the timeframe required by Code § 54.1-2409(D) after he petitioned for reinstatement of his license; and (3) the Board "refused to allow him to challenge the basis for the suspensions of his medical license" at the 2011 and 2013 hearings. In his opening brief, Clowdis provides at least the basic analytical structure applicable to the first issue (i.e., deciding whether a hearing is required before the government deprives a person of a property interest). But the entirety of his argument in support of the second and third points is as follows:

> [Clowdis] was denied due process when the Board refused to conduct a timely hearing on his reinstatement petition. [Clowdis] was also denied due process at each of the two hearings on his reinstatement petition when the Board refused to allow him to challenge the basis for the suspensions of his medical license.

Clowdis cites to no legal authority whatsoever in support of these assertions.[5]

Clowdis's failure to cite authority is significant because "due process 'is not a technical conception with a fixed content unrelated to time, place and circumstances,' but involves

---

[4] "Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008) (alteration in original), *aff'd in part, vacated in part on other grounds*, 279 Va. 52 (2010)). "A significant omission in this regard will result in waiver of the argument on appeal." *Ceres Marine Terminals v. Armstrong*, 59 Va. App. 694, 708 (2012). We have found the "failure to provide legal argument and authority as required by Rule 5A:20(e)" to be "significant" when the appellant's brief "leaves us without a legal prism through which to view his alleged error." *Bartley*, 67 Va. App. at 746.

[5] Indeed, Clowdis makes these unsupported statements within his argument that his claims are timely under the continuing violation doctrine, not in in support of his due process claim.

- 10 -

'intensely practical matters.'" *Hood v. Commonwealth*, 280 Va. 526, 536 (2010) (citations omitted). "Determining what is required of the government to satisfy due process depends upon the particular situation at issue and the interests involved." *Id.* And when making these determinations, we look to case law for guidance to understand how due process applies to novel circumstances. *See, e.g., id.* at 536-37; *McNally v. Va. Dep't of Motor Vehicles*, 80 Va. App. 483, 511-26 (2024).

Moreover, if an individual asserts that a proceeding fails to comply with due process in multiple ways, *each* theory must be developed and explained. *See Gilbert v. Homar*, 520 U.S. 924, 935 (1997) (noting that "[w]hether respondent was provided an adequately prompt post-suspension hearing . . . is a separate question" to whether he was entitled to a pre-suspension hearing (emphasis omitted)); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985) (holding that terminated plaintiff successfully stated a claim for a procedural due process violation based on inadequate pre-deprivation process but failed to state a claim based on delay between the termination and the full hearing). Merely asserting that a due process violation has occurred does not ipso facto encompass every theory of *how* the Board failed to provide the process due. For example, in determining whether the delay between the petition for reinstatement and the full hearing was unconstitutionally lengthy in this case, this Court must know the impact, if any, of Clowdis's alleged misrepresentations in his petition and the related investigation. But Clowdis "offers no case law" or analysis to help answer this question.[6] *Coward v. Wellmont Health Sys.*, 295 Va. 351, 366 (2018). Similarly, regarding his assertion that he was never given an opportunity to challenge the factual basis of the 2007 ruling, Clowdis

---

[6] In *Cleveland Bd. of Educ.*, 470 U.S. at 547, the Supreme Court held that a nine-month gap between termination of an employee and a full hearing was not "unconstitutionally lengthy *per se*" and that the plaintiff had failed to state a due process claim partly because the complaint's allegations "reveal[ed] nothing about the delay except that it stemmed in part from the thoroughness of the procedures." *Id.*

relies on the premise that the 2007 order was not an appealable order under the Administrative Process Act, but he provides no legal authority to support that premise either.

Since Clowdis has not attempted to do so, he apparently expects this Court to build his arguments for him from the ground up. But "it is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Coward*, 295 Va. at 367 (quoting *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017)). "The appellate court is not a depository in which the appellant may dump the burden of argument and research." *Ceres Marine Terminals v. Armstrong*, 59 Va. App. 694, 708 (2012) (quoting *Fadness v. Fadness*, 52 Va. App. 833, 850 (2008)). Addressing the merits of such skeletal arguments would inappropriately "require this court to be an advocate for, as well as the judge of the correctness of, [Clowdis's] position." *Id.* (quoting *Fadness*, 52 Va. App. at 850). Clowdis's failure to cite legal authority for his alternative due process arguments is significant, so those arguments are waived. *Id.*; Rule 5A:20(e). Thus, we address only Clowdis's argument that his procedural due process rights were violated because he was not provided with any hearing before the initial suspension of his medical license under Code § 54.1-2409(A).[7]

## II. Due Process

When the Department receives "documentation by any court or government agency that a person licensed, certified, or registered by a board within the Department of Health Professions has . . . been convicted of a felony," the Director of the Department "shall immediately suspend, without a hearing, the license, certificate, or registration of any person so disciplined, convicted, or adjudged." Code § 54.1-2409(A). The Director must then notify the person of the suspension

---

[7] The legal sufficiency of Clowdis's claims is not before us on this plea in bar; thus, we analyze whether Clowdis has alleged claims that the 2007 order is void ab initio only to determine the claims' timeliness under Code § 8.01-243(B). *See Cal. Condo. Ass'n*, 301 Va. at 20.

in writing and provide a copy of the documentation the Director relied on in suspending the license, certificate, or registration. *Id.*

"Any person who has been aggrieved by any action of . . . the Department of Health Professions" or "any regulatory board within the Departments, . . . shall be entitled to a review of such action." Code § 54.1-109.[8] "Appeals from such actions shall be in accordance with the provisions of the Administrative Process Act (§ 2.2-4000 et seq.)." Code § 54.1-109. Additionally, the individual may apply for reinstatement of his license and "shall be entitled to a hearing not later than the next regular meeting of the board after the expiration of 60 days from the receipt of such application." Code § 54.1-2409(D).

"Section 1 of the Fourteenth Amendment to the United States Constitution provides, in pertinent part, that '[n]o state . . . shall . . . deprive any person of life, liberty, or property, without due process of law . . . .'"[9] *Zackrison*, 67 Va. App. at 482 (alterations in original). When an individual argues that he has been deprived of a property interest in violation of his right to procedural due process, we employ "a two-step inquiry." *McManama v. Plunk*, 250 Va. 27, 34 (1995). "The first inquiry is whether the interest is a property interest protected by procedural due process guarantees; if so, the second is whether the procedures prescribed or applied are sufficient to satisfy the due process 'fairness' standard." *Klimko v. Va. Emp. Comm'n*, 216 Va. 750, 754 (1976).

"Because a physician may not practice medicine in Virginia without a license, a license to practice medicine is a significant property interest, and '[t]he due process clause protects a

---

[8] Code § 54.1-109 was amended in 2025 in a manner not relevant to this appeal. *See* 2025 Va. Acts ch. 341.

[9] We assume without deciding that an order entered in violation of an individual's procedural due process rights may be void ab initio. *See Hannah*, 303 Va. at 119-20 (recognizing that one basis for finding a judgment void ab initio is that the court "adopted an unlawful procedure" (quoting *Watson v. Commonwealth*, 297 Va. 347, 350 (2019))).

physician's property interest in his professional license.'" *Zackrison*, 67 Va. App. at 482 (alteration in original) (citations omitted) (quoting *Simopoulos v. Va. Bd. of Med.*, 644 F.2d 321, 333-34 (4th Cir. 1981) (Butzner, J., dissenting)). Thus, Clowdis was entitled to due process regarding the suspension of his medical license.

"Once it is determined that due process applies, the question remains what process is due." *Klimko*, 216 Va. at 756 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "'The answer to that question is not to be found in [a State's] statute,' but in the due-process standard itself." *McNally*, 80 Va. App. at 511 (alteration in original) (quoting *Cleveland Bd. of Educ.*, 470 U.S. at 541). "Due process requirements 'are not technical, nor is any particular form of procedure necessary.'" *Klimko*, 216 Va. at 760 (quoting *Inland Empire Council v. Millis*, 325 U.S. 697, 710 (1945)). Rather, due process is "flexible and calls for such procedural protections as the particular situation demands." *McNally*, 80 Va. App. at 511 (quoting *Harvey v. Commonwealth*, 297 Va. 403, 417 (2019)). "The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" *Id.* (alteration in original) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976)). Generally, "[d]ue process protects 'the opportunity to be heard' by requiring, at a minimum, '*some* kind of notice' and '*some* kind of hearing.'" *Id.* at 512 (quoting *Fairfax Cnty. Sch. Bd. v. S.C.*, 297 Va. 363, 376 (2019)).

The Supreme Court of the United States has "rejected the proposition that [due process] *always* requires the State to provide a hearing prior to the initial deprivation of property." *Gilbert*, 520 U.S. at 930 (alteration in original) (quoting *Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). In cases "where a State must act quickly, or where it would be impractical to provide

pre[-]deprivation process, post[-]deprivation process satisfies the requirements of the Due Process Clause." *Id.* (collecting cases).

"Courts typically determine whether a particular procedural protection is constitutionally required by considering and balancing the three factors set forth in *Mathews v. Eldridge*." *McNally*, 80 Va. App. at 512; *see Mathews*, 424 U.S. at 335. Thus, we consider "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* (quoting *Mathews*, 424 U.S. at 335).

In this case, the Department has an obvious legitimate interest in moving quickly to protect the public from a healthcare provider who presents a potential threat to public safety. *See* Code §§ 54.1-2400(9), (14), -2408.1, -2915. The Department's "mission . . . is to ensure safe and competent patient care," including "by licensing health professionals," and "enforcing standards of practice." 18 VAC 76, Agency Summary. Thus, the Department and its constituent boards are responsible for ensuring that health professionals are competent to practice "with reasonable skill and safety." *See* Code §§ 54.1-2400(15), -2915(14). Illness and substance abuse present circumstances that create potential threats to a professional's ability to practice safely which the Department must address. *Id.* Individuals receiving medical care are often especially vulnerable, and the threat posed by an incompetent or impaired healthcare provider is immediate and grave. Indeed, for this reason, Department boards are empowered to take summary action, including suspension of a license, in any case of "substantial danger to the public health or safety." Code § 54.1-2408.1. In *Gilbert*, the Supreme Court of the United States upheld the constitutionality of a state university police officer's suspension without notice and a hearing

after he was charged with felony conspiracy to violate a controlled substance law. 520 U.S. at 926-27, 932. The Court noted, "the State has a significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers." *Id.* at 932. The same reasoning applies here, and more compellingly given that the automatic suspension mandated in Code § 54.1-2409(A) is premised not on a felony charge, but on a felony *conviction*.

These serious governmental concerns outweigh Clowdis's interest in avoiding a temporary interruption in the use of his medical license. Although such a suspension is a significant loss to the extent it interrupts an individual's flow of income, the Supreme Court of the United States has "emphasized that in determining what process is due, account must be taken of 'the *length*' and '*finality*' of the deprivation.'" *Gilbert*, 520 U.S. at 932 (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982)). An individual who petitions the Board for reinstatement of his medical license "shall be entitled to a hearing not later than the next regular meeting of the board after the expiration of 60 days from the receipt of such application." Code § 54.1-2409(D).[10] Alternatively, an individual may appeal the suspension directly under the Administrative Process Act.[11] Code § 54.1-109; *see Clowdis*, No. 1381-17-2, slip op. at 3-5,

_____

[10] The dissent cites this statute in support of its analysis that because such a hearing did not take place until 2011, Clowdis was necessarily deprived of due process. The dissent's analysis ignores that such a hearing was promptly scheduled by the Board upon Clowdis's application but was delayed pending the Board's investigation of additional concerns that came to light with respect to Clowdis's mental health and substance abuse. The investigation into those concerns ultimately provided additional grounds for the suspension of Clowdis's license to practice medicine completely independent of his "conviction" in Colorado. Moreover, those additional grounds are not contested in this appeal.

[11] While the dissent is silent on the subject, the right provided by the Administrative Process Act to have the Board's actions in this matter reviewed for their legality by both a circuit court and if appealed further, by this Court, is a significant part of the process which Clowdis was due. The fact that he chose not to pursue such a remedy does not equate to its deprivation by an agency of the Commonwealth.

2018 Va. App. LEXIS 34, at \*4-7.  Thus, an individual whose license has been suspended has multiple avenues for prompt recourse.[12]  *See id.*; *Cleveland Bd. of Educ.*, 470 U.S. at 547 (holding that nine-month adjudication of employee's wrongful termination claim after initial termination was not "unconstitutionally lengthy *per se*").

Moreover, Code § 54.1-2409(A) provides sufficient safeguards against "the risk of an erroneous deprivation" of a medical license.  *McNally*, 80 Va. App. at 512 (quoting *Mathews*, 424 U.S. at 335).  The automatic suspension of the medical license only occurs "[u]pon receipt of documentation by any court or government agency" that the practitioner has been convicted of a felony.  Code § 54.1-2409(A).  The requirement that a court or government agency provide documentation of the felony conviction bolsters the information's reliability.  In *Saunders v. Commonwealth*, 62 Va. App. 793, 809 (2014), this Court found a report from a social worker to a probation officer sufficiently reliable to be admissible in a probation revocation proceeding, despite being hearsay, because the individuals' positions as government officials gave the evidence "substantial guarantees of trustworthiness."  *Id.* (quoting *Henderson v. Commonwealth*, 285 Va. 318, 327 (2013)).  The statutory requirement of documentation from a court or government agency similarly increases the reliability of the information upon which the suspension is based.

The process provided in the underlying criminal case reinforces the Director's initial suspension as well.  In *Gilbert*, the Court noted that a pre-suspension hearing was not required for the university police officer charged with a felony drug crime partly because "the arrest and

---

[12] As noted, we do not address Clowdis's argument that he was denied due process based on the delay between his petition for reinstatement and the hearing because Clowdis failed to brief that issue beyond asserting that the hearing occurred outside the time provided in Code § 54.1-2409(D).  *Cf. Lee v. City of Norfolk*, 281 Va. 423, 435 (2011) ("It is possible for a state agency to fail to adhere strictly to its regulations without violating the constitutional right to due process.").

- 17 -

the filing of charges" against the employee assured that there were reasonable grounds to support the suspension. 520 U.S. at 934. That reasoning applies with equal force to the initial suspension in this case because underlying Colorado conviction came after Clowdis was afforded the full panoply of rights available to criminal defendants. In addition, the Director's review of the documentation is itself another layer of protection against error. Thus, Code § 54.1-2409(A) provides sufficient safeguards against a mistaken initial suspension of a medical license before a full hearing is provided.[13] *See, e.g.*, *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 619-20 (1974) (holding statute requiring an affidavit justifying writ to repossess goods, issuance of writ by

---

[13] Clowdis insists, and our dissenting colleague agrees in support of her position, that he was "never convicted of any felony." But we are not bound by Clowdis's legal conclusions asserted in his complaint when deciding this plea in bar. *See Cal. Condo. Ass'n*, 301 Va. at 20 (noting that "a plea in bar is partly like a demurrer" when it is decided on the pleadings). To that end, and in response to our colleague's dissent, we note that the Supreme Court of Colorado has "held that in a deferred judgment and sentence agreement, the court's acceptance of the defendant's guilty plea '*yields a conviction*.'" *McCulley v. People*, 463 P.3d 254, 258 (Colo. 2020) (emphasis added) (quoting *M.T. v. People*, 269 P.3d 1219, 1221 (Colo. 2012)). Thus, "during the pendency of the deferred judgment and sentence period, *a defendant may be treated for some purposes as* '*convicted*,' *even though no judgment of conviction has entered*." *Id.* at 258 (emphasis added) (quoting *Hafelfinger v. Dist. Ct. of Eighth Jud. Dist.*, 674 P.2d 375, 377 (Colo. 1984)); *see M.T.*, 269 P.3d at 1221-22 (collecting cases). The defendant is "*no longer* '*convicted*'" only "upon the successful completion of the conditions of the deferred judgment and sentence agreement," at which point "the defendant's previously entered guilty plea 'shall be withdrawn' and the charge 'shall be dismissed with prejudice'" under Colorado's deferred judgment statute. *Id.* (emphasis added) (first quoting *Hafelfinger*, 674 P.2d at 377 n.3; and then quoting Colo. Rev. Stat. § 18-1.3-102(2)). If the court fails to enter an order, these effects occur "by operation of law" under the statute "once the deferred judgment is successfully completed." *Flores-Heredia v. People*, 395 P.3d 800, 802 (Colo. 2017).

Clowdis alleges he completed the "diversion program" on March 16, 2007, so his guilty plea and the felony charge were dismissed by operation of law on that date, before the April 2007 suspension order. But the sentencing order (attached to his complaint) entered on September 6, 2005, set the term of his deferred judgment at four years, with a return date of September 6, 2009. The judgment included several conditions; the "diversion program" was only one of those conditions. Thus, merely completing the "diversion program" in March 2007 does not necessarily equate to successful completion of the deferred judgment. *Cf. Flores-Heredia*, 395 P.3d at 802 (holding defendant successfully completed deferred judgment as of date of expiration of one-year deferred judgment period). In fact, the Colorado court did not enter an order dismissing the felony charge with prejudice until August 19, 2008. Thus, it appears that Clowdis was still "convicted" under Colorado law when the Director suspended his medical license in 2007.

judge, immediate hearing after the seizure, and dissolution of the writ absent proof justifying the writ provided sufficient procedural safeguards, despite ex parte pre-deprivation procedure). Finally, and despite Clowdis's unsupported assertion to the contrary, Code §§ 54.1-109, 2.2-4025, et seq., clearly permitted him to seek prompt court review of the decision of the Board had he chosen to do so.

Even if the 2007 order resulted from a mistake of fact, due process "has never been construed to require that the procedures used . . . be so comprehensive as to preclude any possibility of error." *McNally*, 80 Va. App. at 512 (alteration in original) (quoting *Mackey v. Montrym*, 443 U.S. 1, 13 (1979)). Code § 54.1-2409(A) provides sufficient pre-suspension safeguards to licensed individuals by requiring documentation "by a court or government agency" that an individual has been convicted of a felony. Thereafter, the individual may appeal the order or apply for reinstatement of his license and obtain a full hearing under Code § 54.1-2409(D). *See Clowdis*, No. 1381-17-2, slip op. at 4-5, 2018 Va. App. LEXIS 34, at *6. Clowdis did not appeal the 2007 order. He subsequently applied for reinstatement and received a hearing by the Board. After the hearing, the Board suspended Clowdis's license in 2011 for reasons in addition to his guilty plea in the Colorado felony case.[14] Under these circumstances, a pre-suspension hearing was not required, and Clowdis received all the process he was due.

---

[14] We do not address Clowdis's argument that the Board denied him due process by barring him from challenging the basis of the 2007 order at the 2011 and 2013 hearings. Even so, we note that the complaint and its exhibits demonstrate the Board had multiple sufficient reasons for suspending his medical license notwithstanding the ultimate dismissal of the felony. *See* Code § 54.1-2915(A)(2) (substance abuse rendering him unfit for performance of professional duties), (A)(14) (inability to practice with reasonable skill or safety because of illness or substance abuse), and (16) (performing any act likely to deceive, defraud, or harm the public); *see also* Code § 54.1-2915(A)(10) ("[k]nowingly and willfully committing an act that is a felony under the laws of the Commonwealth or the United States"). The Board's detailed findings reflect a significant history of mental illness, including at least two involuntary commitments. The record also reflects that, at one point, Clowdis had suicidal and homicidal ideations. *See* Code § 54.1-2915(A)(2), (4), (10), and (14).

For these reasons, Clowdis failed to demonstrate that the 2007 order is void ab initio as entered in violation of his due process rights. Thus, his claims challenging the order are subject to the five-year statute of limitations applicable to actions for injuries to property. Code § 8.01-243(B). Since Clowdis filed this action in 2024, more than five years after the challenged 2007 order, his claims are untimely. *Id.* Similarly, his claims attacking the 2011 and 2013 Board orders depend on the 2007 order's being void ab initio and are similarly barred.

CONCLUSION

The circuit court correctly concluded that Clowdis's claims are barred by Code § 8.01-243(B). For the same reasons, the circuit court correctly denied Clowdis's motion to stay the final order. Since our decision on the statute of limitations resolves the appeal, we need not reach the alternative basis for the circuit court's judgment regarding sovereign immunity.

The circuit court's judgment is affirmed.

*Affirmed.*

Callins, J., dissenting.

I agree with my colleagues that Clowdis failed to properly assert his extrinsic fraud argument and that he failed to preserve his continuing violation doctrine argument. I also agree that the limitation of Code § 8.01-243(B), which applies to "[e]very action for injury to property," applies to Clowdis's property interest in his medical license and that no statute of limitations can bar an action asserting that an order is void ab initio because such judgment is a "complete nullity" and may be attacked "in any 'valid direct or collateral proceeding where the voidness of the order is properly at issue.'" *Ayers v. Brooke Rd., LLC*, 300 Va. 315, 323 (2021) (first quoting *Singh v. Mooney*, 261 Va. 48, 52 (2001); and then quoting *Bonanno v. Quinn*, 299 Va. 722, 736-37 (2021)). Yet I would further hold that the 2007 order is void ab initio for lack of due process, precluding the statute of limitations as a bar to Clowdis's declaratory judgment action. For the same reason, I would also hold Clowdis's action is not barred by sovereign immunity.

The Department suspended Clowdis's medical license on April 26, 2007, after receiving what arguably amounted to misconstrued information that Clowdis was convicted of a felony in Colorado.[15] Two years earlier, Clowdis had entered a conditional guilty plea to a felony subject

---

[15] My colleagues contend that whether Clowdis was convicted of a felony is a legal conclusion. I disagree, and assert that, for purposes of suspending his license, whether Clowdis was convicted of a felony is a question of fact. *See* Code § 54.1-2409(B) ("The clerk of any court in which a conviction of a felony or an adjudication of incapacity is made . . . shall have a duty to report these *findings*." (emphasis added)). It is the existence of a conviction which triggers the Board's authority to suspend a medical professional's license. *See* Code § 54.1-2409(A); *cf. Dodson v. Commonwealth*, 23 Va. App. 286, 299 (1996) ("*It is the fact that the conviction exists*, valid or invalid, that imposes the firearms disability on the defendant felon." (emphasis added) (quoting *United States v. Blevins*, 802 F.2d 768, 770-71 (4th Cir. 1986))). Here, Clowdis's matter did not involve a final judgment of conviction as a matter of fact.

But even if my colleagues rightly characterize Clowdis's felony conviction as conclusive, they do so without a firm basis in Colorado law. Indeed, they cast Colorado law as settled on this point, when in reality the effect of a non-final deferred judgment has not been authoritatively decided. *See McCulley v. People*, 463 P.3d 254, 258 (Colo. 2020) (holding that, for purposes of

to dismissal upon satisfaction of certain terms, including successful completion of a statutory diversion program. At the time of the Department's suspension order, the case was pending dismissal. Indeed, it was ultimately dismissed, and no conviction stands. Still, the Board suspended Clowdis's medical license under § 54.1-2409 on the impression that Clowdis had in fact been convicted of a felony and, as Clowdis rightly asserts, there is no procedure by which to appeal a suspension under the statute.

Significant to today's decision, Clowdis never received an opportunity to challenge the underlying basis for his 2007 suspension. My colleagues contend that because due process does not require only pre-deprivation hearings and further, because Clowdis received a hearing four years after his license was suspended, his due process rights were thus satisfied. But this contention misses the point—both of Clowdis's argument and of due process protections.

According to his pleadings, upon learning of the suspension, Clowdis quickly inquired of the Department to correct the factual error and revoke the suspension. Sometime in "late 2008" the Board responded to Clowdis, instructing him to file a formal petition for reinstatement of his license under Code § 54.1-2409(D) in order to correct the error. He filed the petition on December 4, 2008.[16] Under Code § 54.1-2409(D), Clowdis was "entitled to a hearing not later than the next regular meeting of the board after the expiration of 60 days from the receipt of such application." The Board did not provide Clowdis a hearing at their next meeting, which occurred

_____

the subject statute, the term "conviction" excludes successfully completed deferred judgments) ("[D]uring the pendency of the deferred judgment and sentence period, a defendant may be treated *for some purposes* as 'convicted,' even though no judgment of conviction has entered." (emphasis added)); *cf. People v. Figueroa-Lemus*, 465 P.3d 565, 567 (2020) ("[A] deferred judgment and sentence is not a final judgment and therefore, unless and until revoked, it may not be subject to either direct appellate review or postconviction relief."). Given that this Court does not even have the final say on Virginia law, we grasp beyond our reach to portend that we might have any authority regarding the interpretation of Colorado law.

[16] By that date, Clowdis's deferred judgment was satisfied, and his felony charge was dismissed with prejudice.

from February 19 through 21, 2009.  Instead it issued a "Statement of Particulars" that included the finding that Clowdis had been convicted of a felony.  Later that year, the Board required Clowdis to withdraw his reinstatement petition and undergo pre-hearing medical and psychological evaluations.  When the Board eventually granted Clowdis a hearing on his petition on May 19, 2011, it did not permit Clowdis to argue or offer proof contrary to the Board's finding that he was convicted of a felony, leaving that factual finding unchallenged.

I agree with my colleagues that "[w]here no evidence is taken in support of the plea, the [circuit] court, and the appellate court upon review, must rely solely upon the pleadings in resolving the issue presented." *Robinson v. Nordquist*, 297 Va. 503, 513-14 (2019) (quoting *Tomlin v. McKenzie*, 251 Va. 478, 480 (1996)).  "The facts as stated in the pleadings by the plaintiff are taken as true for the purpose of resolving the special plea." *Gray v. Va. Sec'y of Transp.*, 276 Va. 93, 97 (2008) (quoting *Niese v. City of Alexandria*, 264 Va. 230, 233 (2002)).  I also agree that, to the extent necessary, we "review de novo a [circuit] court's ruling on a plea of sovereign immunity." *Pike v. Hagaman*, 292 Va. 209, 214 (2016).  Similarly, we review de novo a circuit court's determination of the applicable statute of limitations. *William H. Gordon Assocs. v. Heritage Fellowship*, 291 Va. 122, 136-37 (2016).

Clowdis challenges the applicability of a statute of limitations to his action, arguing that a statute of limitations does not apply to actions challenging a judgment as void ab initio. *See Ayers*, 300 Va. at 323.  In relevant part, he argues that the 2007 order automatically suspending his license is void ab initio because he was denied due process.  He further argues that an action for a declaratory judgment is not "an action wherein a judgment for money is sought" and thus not a personal action under Code § 8.01-243(B) subject to the five-year limitation period. *See* Code § 8.01-228.

As our Supreme Court recognized in his predecessor case, and as my colleagues and I reaffirm today, Clowdis's medical license is a property interest subject to the five-year statute of limitations. *See Clowdis v. Owens*, No. 230107, slip op. at 3 (Va. Aug. 14, 2023) (order); Code § 8.01-243(B). And as my colleagues and I likewise recognize, no statute of limitations can bar an action asserting that an order is void ab initio.[17] A judgment order is void ab initio when, among other circumstances, a tribunal adopts an unlawful procedure. *Hannah v. Commonwealth*, 303 Va. 106, 120 (2024) (quoting *Watson v. Commonwealth*, 297 Va. 347, 350 (2019)). This is the heart of Clowdis's due process claim. *See also Anthony v. Kasey*, 83 Va. 338, 340 (1887) ("A departure from established modes of procedure will often render the judgment void." (quoting *Windsor v. McVeigh*, 93 U.S. 274, 283 (1876))).

This Court has previously held that a physician's license to practice medicine represents a constitutionally-protected "significant property interest." *Va. Bd. of Med. v. Zackrison*, 67 Va. App. 461, 482 (2017). Where the government deprives a private citizen of a property interest, "established modes of procedure" involve notice and a hearing, as required by the Due Process Clauses of the Virginia Constitution and the United States Constitution. "Procedural due process guarantees a litigant the right to reasonable notice and a meaningful opportunity to be heard," to provide "safeguards against a government's arbitrary deprivation of certain interests." *Mar v. Malveaux*, 60 Va. App. 759, 772 (2012) (quoting *Etheridge v. Med. Ctr. Hosps.*, 237 Va. 87, 97 (1989)), *superseded by statute on other grounds*, 2020 Va. Acts chs. 868, 1038 (amending

---

[17] To be clear, "the form of the present litigation, which is a declaratory judgment suit, does not affect our analysis of the statute of limitations." *Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity*, 266 Va. 455, 465 (2003). Appellate courts of this Commonwealth do not "permit a complainant to use the declaratory judgment statute as a vehicle to circumvent the statute of limitations applicable to the substance of a complaint" and, thus, render the statute of limitations meaningless. *Id.* Instead, the substance of a litigant's complaint determines the applicable statute of limitations. Here, Clowdis asserts that the 2007 order injuriously interfered with his property interest in his medical license.

Code § 40.1-29(J) to provide a private right of action not available when *Mar* was decided), *as recognized in*, *Campbell v. Groundworks Operations, LLC*, 82 Va. App. 580, 587 (2024). In essence, "due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (alteration in original) (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 171-72 (1951)). Thus, a procedural due process violation—which inherently involves a departure from established modes of procedure—would render an order void ab initio rather than voidable.

In deciding whether a violation of procedural due process has occurred, the United States Supreme Court has "consistently . . . held that *some* form of hearing is required before an individual is finally deprived of a property interest." *Id.* at 333 (emphasis added). "It is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing." *Klimko v. Va. Emp. Comm'n*, 216 Va. 750, 757 (1976) (quoting *Arnett v. Kennedy*, 416 U.S. 134 (1974) (White, J., concurring in part and dissenting in part)). Not only is an individual entitled to a hearing, but such hearing must also be "at a *meaningful* time and in a *meaningful* manner." *Arnett*, 416 U.S. at 178 (White, J., concurring in part and dissenting in part) (emphases added) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). And "[w]here a question of law is all that needs to be resolved," written argument and the submission of evidence alone may fulfill the requirement of a hearing. *James v. Arlington Cnty. Bd. of Supervisors*, 226 Va. 284, 290 (1983).

Taking the facts pleaded as true, I would conclude that the 2007 order is void ab initio for lack of due process. The Department suspended Clowdis's medical license, believing Clowdis was convicted of a felony. And although I agree with my colleagues that the Department had a legitimate interest in moving quickly pre-deprivation, Clowdis was nonetheless entitled to a

*meaningful* opportunity to be heard as soon as possible post-deprivation on the legitimacy of the deprivation itself. *See Mall Amusements, LLC v. Va. Dep't of Alcoholic Beverage Control*, 66 Va. App. 605, 614 (2016). Yet when he sought such opportunity to correct the Board's understanding that he had been convicted of a felony, the Board, over a year later, directed Clowdis to his only recourse, the reinstatement process—a process which, in this instance, presumed the correctness of the initial suspension action. Thus, Clowdis was denied the opportunity to challenge the Board's underlying factual finding. *See, e.g.*, *James*, 226 Va. at 290 (holding that a meaningful hearing is one "appropriate to the nature of his case").

The majority would point to the proceedings born of Clowdis's 2008 reinstatement petition as evidence of post-deprivation process, but this conclusion is only partly accurate. According to Code § 54.1-2409(D), Clowdis was entitled to a hearing "not later than the next regular meeting of the board after the expiration of 60 days from the receipt of such application." The Board held its next qualifying meeting February 19 through 21, 2009. But instead of granting him a hearing then, according to his Complaint, the Board issued a Statement of Particulars three months later, in May 2009, that persisted in the assertion that Clowdis had been convicted of a felony. Further, the Board required Clowdis to withdraw his request for a hearing on his petition for reinstatement until he had completed medical and psychological evaluations. Meanwhile, it continued to incorrectly assert that Clowdis had been convicted of a felony and to withhold his license to practice medicine. Thus, not only did the Board refuse to provide an opportunity to be heard on the initial deprivation of Clowdis's property rights, but it persisted in thwarting Clowdis's every subsequent effort for years thereafter. And each compounding injury was premised on the 2007 suspension order.

As my colleagues note, the Board did finally grant a hearing on Clowdis's petition for reinstatement on May 19, 2011—four years after the Department's initial deprivation. Yet even

then, the Board prohibited Clowdis from offering argument or evidence on the factual basis of the 2007 order. At subsequent hearings, Clowdis alleges the Board expressly forbade him from challenging the factual basis of the 2007 order. Since then, the Board's actions against Clowdis derive from that 2007 order, and all the decisions on Clowdis's previous claims derive from the Board's factual finding.[18] As recently as 2022, Clowdis petitioned the Board for a new factfinding to exonerate him, just as the Board had done for others in the past. However, the Board again stated that Clowdis would need to file a petition for reinstatement.

The Board never afforded Clowdis an opportunity to be heard on his challenge to the factual basis for its 2007 order. As a result, the Board violated Clowdis's procedural due process rights, and the 2007 order is void ab initio. Because the 2007 order is void ab initio, the circuit court erred in sustaining the Department's plea in bar on the grounds that Clowdis's action was time-barred.

Because I would hold that the circuit court erred as to the statute of limitations bar, I would also evaluate Clowdis's challenge to the Department's assertion of sovereign immunity and hold that the Department is not entitled bar to Clowdis's due process claim under the doctrine. Generally, "the Commonwealth is immune both from actions at law for damages and from suits in equity to restrain governmental action or to compel such action," including actions for a declaratory judgment. *DiGiacinto v. Rector & Visitors of George Mason Univ.*, 281 Va. 127, 137 (2011) (quoting *Afzall v. Commonwealth*, 273 Va. 226, 231 (2007)). However, our Supreme Court has recognized that "sovereign immunity does not preclude declaratory and

---

[18] The majority notes that at the time of the 2011 reinstatement hearing, there were several bases upon which the Board could suspend Clowdis's license. Although that may be true, it doesn't change the fact that the initial suspension was based on an inaccuracy and that Clowdis was deprived of his due process right to challenge the factual basis of the suspension. All subsequent proceedings stemmed from that initial deprivation. My colleagues seem to allude to a mootness issue, yet the question of mootness was not raised in this appeal.

injunctive relief claims based on self-executing provisions of the Constitution of Virginia or claims based on federal law." *Id.* Recently, this Court specifically held that the Due Process Clause of Article I, § 11, of the Virginia Constitution is a self-executing provision. *Ibanez v. Albemarle Cnty. Sch. Bd.*, 80 Va. App. 169, 190 (2024). Here, Clowdis seeks declaratory judgment under both a self-executing constitutional provision and federal law—a due process claim under the Virginia Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. Regardless of its potential success on the merits, as pleaded, his due process claim satisfies the exception sufficient to survive a sovereign immunity bar.

For the foregoing reasons, I would reverse the circuit court's judgment in its entirety and thus I respectfully dissent.